Spear, C. J.
The motion of each party for an instructed verdict necessarily involved a concession that, as the case then stood, there remained but a question of law to be determined by the court upon a consideration of the controlling facts shown by the record, with the legitimate inferences to be drawn therefrom, and the application thereto of the proper rules of law. As this court does not weigh the evidence the question here is whether or not, upon any rational view of the case, the judgment is supported by evidence. But two witnesses were called, the plaintiff himself and one George Thresh, who gave his name as George Thresh, Sr., and his residence as near Otsego which is in Muskingum county. It is shown that the plaintiff was, November 2, 1904, a practicing lawyer in Muskingum county, having an office in the city of Zanesville. In the forenoon of that day there came to the plaintiff’s office two men, one was J. B. Wilson, and the other a stranger to plaintiff, but introduced by Wilson as George Thresh. These men made it known that the stranger wished to borrow, on note and mortgage, the sum of three thousand dollars. It was represented to plaintiff that the stranger was the owner of a farm of some three hundred acres near Otsego, .and would place a-mortgage on that prop *208 erty to secure the loan. The loan desired was to be for five years at six per cent, interest, payable annually, but the plaintiff explained to the two men that the money, though in his name in bank, was not actually his but belonged to a client, and the loan would have to be at the rate of seven per centum in fact though appearing to be at six per centum on the face of the papers, the discount of the one per cent, to be taken out in advance, and that was assented to. The county map was consulted and the borrower pointed out the land where it is marked in the name of George Thresh. The two men then left the office and the plaintiff went to the court house to examine the records respecting the title to the land, and then made such examination. He found the title in the name of George Thresh and free of incumbrances. In the afternoon the two men again appeared at the office, the borrower coming first and Wilson a little later, but before the papers were executed. Notes for three thousand dollars in the aggregate, and a mortgage on the Otsego land to secure them, were then drawn and duly executed by the stranger, represented as an unmarried man, and delivered by him to the plaintiff. Thereupon the plaintiff gave the stranger a check for the amount he was to receive, a copy of which check, as it now appears, follows:
“Zanesville, Ohio, November 2, 1904. “The Old Citizens National Bank, United States Depositary.
“Pay to the order of George Thresh $2,850 (twenty-eight hundred fifty dollars).
“J. M. McHenry, Attorney.”
*209 Stamped on face: “Paid November 3, 1904. The Old Citizens National Bank, Zanesville, Ohio.”
Endorsed on back: “George Thresh, J. B. Wilson.”
The check given the borrower was in fact paid by the Bank November 3, 1904.
During the entire transaction of November 2, 1904, including the act of delivering the check to the stranger, plaintiff believed he was the George Thresh living at Otsego and the owner of the farm, relying entirely on the introduction by Wilson, and taking no other means of ascertaining the stranger’s identity. Plaintiff had known Wilson for some time, and had had business transactions with him.
As matter of fact the stranger was not George Thresh, of Otsego; that George Thresh, as has already been indicated, was known as George Thresh, Sr., and so wrote his name, He was not at the office of plaintiff, or at the Bank, nor did he have any agency in the transaction at the time, or knowledge of it until several years later. In short the stranger perpetrated a swindle, and got the money by falsely representing himself to be another person, and to be the owner of the farm.
The plaintiff testified that when he gave the man the check he believed him to be George Thresh, the owner of the real estate; that he expected him to go to the Bank and be identified as George Thresh, and get the money, adding that he “expected the Bank to do what he considered their duty, to pay the man named in the check, George Thresh, $2,850; whether that was the man or not, *210 I didn’t pay any attention to it.” And again, to a question whether there was any doubt in his mind that the man would go right to the Bank with the check, answered: “I didn’t think anything about that.” And, to a further question as to his intention, answered: “I intended to give him the check and he could do with the check as he pleased.”
It is sought to charge the Bank with having paid the check as on a forged indorsement, and in this connection it is averred “that said unknown person to whom said check was delivered was not the said George Thresh whom the plaintiff then and there believed him to be.” But there is no evidence in support of the charge in the petition that the name George Thresh on the back of the check was forged, and, for all that appears, that man’s name may have been George Thresh. Reduced to its last analysis the situation is that the Bank paid the money which the check called for to the identical person whom the plaintiff expected would receive the money on it, though not to the George Thresh to whom the plaintiff supposed he was giving the check. The plaintiff’s ground of right to recover is based, not upon a charge that the Bank failed to pay to one named George Thresh, but because it didn’t pay to a particular George Thresh who was the owner of the land. .True, the plaintiff testified that he expected the man to go to the Bank and be identified as George Thresh and get the money. But, this can hardly mean that he expected the holder of the check to be identified at the Bank as the owner, of the farm on which the mortgage: had been attempted..'to. be *211 placed' in face of the fact that the Bank was a total stranger to the transaction of the loan and mortgage, and knew nothing whatever about the land. Surely such a supposition would be so manifestly absurd as not to justify serious consideration.
The fact of the payment of the check to the wrong man did not come to the knowledge of the plaintiff for three years after the date of the check. He then tendered to the Bank the check and demanded payment of the amount, which was refused.
No direct evidence was given respecting the transaction of payment, but the petition avers that the check was presented to the Bank by the unknown person and the money paid by the Bank to him, and the legitimate inference to be drawn from the indorsements on the check is that Wilson identified the man holding the check as George Thresh since the legal effect of a second indorser’s contract is to guarantee the genuineness of the earlier indorsement. The Bank, therefore, is presumed, under the well known methods of business, to have relied upon such identification, and, in so doing was at least fully as vigilant as was the drawer of the check who relied upon precisely the same source of identification.
It is averred and not denied that the Bank did not ask the plaintiff if the bearer was the rightful payee of the check, but this fact loses importance in the light of the testimony, for had such inquiry been made, the answer, consonant with the declarations of the plaintiff on the witness stand, would 'have undoubtedly been in the affirmative. It is. *212 inconceivable that the plaintiff would then have questioned the right of the bearer of the check to receive payment of it.
The kernel of the whole trouble lay in the false representation of the stranger that he was the owner of the farm, and the ready acceptance by the plaintiff of the truth of that representation. All other incidents connected with the loan center about those two facts, and with neither of those facts did the Bank have the slightest connection. The inference seems irresistible that if the Bank was guilty of any negligence whatever in paying the check the plaintiff was guilty of greater negligence in issuing it, and thus giving a stranger opportunity to perpetrate a fraud on an innocent drawee.
The discussion by the learned counsel has taken a wide range. We do not, however, consider that it is necessary for us to take space with extended discussion or citation of authorities respecting the question of the general duty and liabilities of banks in dealing with the checks of their depositors. The question simply is whether, under the circumstances shown by the record in this case, the drawer of the check ought to prevail as against the Bank. Ought the Bank to be held liable as for a negligent payment on a forged indorsement? We think not, and the refusal may be placed upon two grounds. One that, there being no proof that the name of the person who received payment of the check was not George Thresh, there is no evidence of a forgery in any legal sense; and another, that under the well established rule (Selser v. Brock, 3 Ohio St., 302; Ogden v. Ogden, 4 Ohio *213 St., 182; Bigelow v. Comegys, 5 Ohio St., 256; Resor v. O. & M. Rd. Co., 17 Ohio St., 139; Ramsey v. Jones, 41 Ohio St., 685), that where one of two innocent persons must suffer loss by the fraud or misconduct of a third person, he who first reposes the confidence and commits the first oversight, must bear the loss, the plaintiff is estopped by his own lack of caution to now demand payment of the amount of the check by the Bank. The principle is of wide application, and is illustrated in many cases relating to the illegal possession of personal property by a wrong-doer fraudulently personating the real owner, and thus clothing himself with indicia of ownership. A number of these cases are referred to by counsel for defendant in error and will be found cited in the Reporter’s notes.
It is important to note that the case at bar is to be distinguished from many in the books where the bank was sued by the payee of a check wrongfully paid to one personating the payee and forging his signature. Of such cases is that of Dodge v. Bank, 20 Ohio St., 234, and 30 Ohio St., 1. It is to be noted also that a clause of the opinion in the last cited report indicates that had the defendant shown that the person to whom the check was delivered by the drawer was in fact the person whom the drawer intended to designate as Frederick B. Dodge, a different question would have been presented, and it is a fair inference, considering the entire report of the case, that if the suit had been brought by the drawer instead of the payee, the opinion of the court upon the question of liability might have been different. Nor do we think that *214 the case of Armstrong v. Bank, 46 Ohio St., 512, much relied upon by plaintiffs counsel, sustains their contention. The facts were essentially different, there being no negligence shown on the part of the drawer of the check.
We find no error in the judgment of the circuit court affirming that of the common pleas, and the same will be

Affirmed.

Davis, Shauck, Price and Johnson, JJ., concur. Donahue, J., not participating.